**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 5, 2008**

Elisabeth A. Shumaker
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ROBERT STONE,

        Plaintiff-Appellant,

v.

DEPARTMENT OF AVIATION;
DENVER INTERNATIONAL
AIRPORT; CITY AND COUNTY OF
DENVER, a Municipal Corporation,

        Defendants-Appellees.

No. 07-1226
(D.C. No. 02-cv-1736-EWN-MJW)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **HARTZ**, and **HOLMES**, Circuit Judges.

---

      Robert Stone appeals from the district court's entry of summary judgment

favoring defendants on his claim of employment discrimination under the

Americans with Disabilities Act, 42 U.S.C. §§ 12101-117 ("ADA"). Our

jurisdiction arises under 28 U.S.C. § 1291.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In the district court, Stone offensively asserted collateral estoppel to establish defendants' liability. He relied on a favorable administrative ruling by a city agency, as affirmed by two state courts, that his employer discriminated against him on the basis of disability in violation of city anti-discrimination rules that mirror ADA standards. Although the court referred to the state court decisions, its ruling was based on the preclusive effect of the city agency's findings, which the court concluded did not meet ADA standards.

In focusing on the city agency's decision, rather than the state court judgments, the district court erred. As we explain, in an ADA suit, a federal court must look only to the judgments of the reviewing state courts, not the underlying agency decision, when determining the extent to which a state's preclusion rules apply. Looking to the state court judgments here, we conclude that the only issue to which collateral estoppel applies is that Stone's employer regarded him as disabled. Therefore, we reverse the district court's grant of defendants' renewed motion for summary judgment and remand the case for further proceedings.

**I**

Stone was a career service employee of the City and County of Denver (the "City"). He was employed from September 1995 until January 14, 2001, as a Heavy Equipment Service Technician ("HES technician") with the City's Department of Aviation ("Agency") at Denver International Airport ("DIA"). That position required him to maintain a commercial driver's license ("CD

license"). He lost his CD license in 1997 due to his hypertension. From that point through 2000, he continued to work at DIA, nominally as a HES technician, but performing only jobs that did not require a CD license. During this period, he developed additional health problems, leading to functional restrictions that further limited his work activities and caused him to take time off of work.

In June 2000, these additional functional restrictions were lifted, but Stone's hypertension continued to prevent him from renewing his CD license. The Agency attempted to transfer him to a position as a Materials and Parts Technician ("MP technician") in the Technical Services ("TS") department at DIA, a position that did not require a CD license. Believing the transfer was secured, Stone did not apply for other openings for which he was qualified. But the TS director objected to the transfer, and it never occurred. In late 2000, the Agency notified Stone that he would need to renew his CD license in order to remain employed. Stone was unable to do so, and the Agency terminated his employment in January 2001.

Stone appealed both the refusal to transfer him and his termination through the City's Career Service Board ("CSB"). Only the failure to transfer is at issue in the present appeal. Stone alleged that the Agency's refusal to transfer him to a position he could perform violated the Denver Career Service Board Personnel Rules against disability discrimination.

After an April 2001 hearing, at which the parties were able to offer evidence and argument, the CSB hearing officer issued a written decision. Applying ADA standards to determine liability under the City's rules, the hearing officer ruled in Stone's favor, finding that the Agency: (1) regarded Stone as having an impairment that prevented him "from performing the major life activity of working in a simple stock room position," (2) failed to demonstrate a legitimate business reason for failing to complete the transfer, and (3) proffered pretextual reasons for refusing to complete the transfer. The hearing officer ordered the Agency to reinstate Stone with back pay and benefits, complete Stone's transfer to the position of MP technician or a suitable alternative position, and place Stone in a temporary position until the transfer was complete. The hearing officer further stated that she lacked jurisdiction to award damages arising from Stone's reliance on the promised transfer.

After the CSB denied defendants' request for reconsideration in July 2001, they appealed to the Denver District Court. See Colo. R. Civ. P. 106(a)(4)(I) (permitting limited state-court review to determine whether the hearing officer exceeded her jurisdiction or abused her discretion). The Denver District Court affirmed the hearing officer's decision. Citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999), the court determined that the "[h]earing [o]fficer's discussion of the 'regarded as impaired' issue sufficiently demonstrate[d] her grasp of the appropriate legal principles, despite the fact that she did not

-4-

specifically comment on limitations in a class, or range, of jobs." It further concluded that the hearing officer's findings on this point were supported by substantial evidence, namely, testimony regarding the TS supervisor's reservations about the effect that Stone's medical restrictions might have on his ability to perform as an MP technician.

Defendants next appealed to the Colorado Court of Appeals, which affirmed the Denver District Court's decision. The Court of Appeals concluded that "[a]lthough the hearing officer did not specifically state that Stone was regarded as significantly restricted in his ability to perform a broad range of jobs or a class of jobs, the record contains ample evidence to support the hearing officer's determination that the Agency regarded Stone as disabled under the Sutton test." Specifically, the court (1) observed that an MP technician's job description "includes general and nonspecialized duties, responsibilities, and requirements that are common to many jobs;" (2) noted that the hearing officer had considered whether an MP technician had specialized requirements along with Stone's unrefuted testimony that he had been placed on a list of eligible candidates for the same job in 1998; (3) quoted at length from the hearing officer's decision concerning the Agency's failure to establish a legitimate reason for not transferring Stone as an MP technician; (4) observed that the Agency never approached Stone about another position (Automotive Service technician) he was qualified to perform, which the court said supported the conclusion that

the Agency regarded Stone as unable to perform more than one particular job; and (5) reasoned that the TS director's "comments and actions demonstrate that the Agency objected to Stone's transfer because of the myths, fears, and stereotypes associated with disabilities." The Court of Appeals declined to address all other arguments raised by defendants because they had failed to present them to the hearing officer or the Denver District Court. It does not appear that defendants filed a petition for a writ of certiorari with the Colorado Supreme Court.

In August 2001, after defendants initiated the state court action, Stone filed a charge with the Equal Employment Opportunity Commission ("EEOC"). He received a right-to-sue letter in June 2002. With the state suit still pending, he filed this action in federal district court in September 2002, asserting one claim of disability discrimination under the ADA. In a prior appeal, a panel of this court concluded that because Stone was not required to file his ADA claim as a compulsory counterclaim in the state action, res judicata did not prevent him from pursuing it in federal court. See Stone v. Dep't of Aviation, 453 F.3d 1271, 1281 (10th Cir. 2006).

After this court's remand in the federal case, each side filed a motion for summary judgment. The district court, applying the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), granted defendants' motion and denied plaintiff's. The court concluded that Stone had failed to establish an element of his prima facie case, namely that he was a

member of a protected class because he was regarded as disabled. The court

rejected as conclusory Stone's argument that, because an MP technician is typical

of a broad range of jobs city-wide and DIA's director of airport maintenance had

referred to an MP technician by the generic term "parts room handler," the TS

director viewed him as substantially limited in performing a class of jobs or a

broad range of jobs. Further, the court concluded that although the hearing

officer's decision was entitled to preclusive effect under the doctrine of collateral

estoppel, the hearing officer's findings also did not establish this element.

Although the officer found that the Agency regarded Stone as having an

impairment that prevented him "from performing the major life activity of

working in a simple stock room position," this finding, the court stated, was

"insufficient to satisfy the ADA definition of disability." Specifically, the court

determined that the finding did not satisfy the Sutton standard because it was

limited to a particular job rather than a class of jobs or a broad range of jobs in

different classes.[1] This appeal followed.

## II

We review de novo the district court's grant of summary judgment, using

the same legal standard applicable in the district court. Salguero v. City of

Clovis, 366 F.3d 1168, 1172 (10th Cir. 2004). Summary judgment "should be

---

[1] The district court also held that Stone could not establish a prima facie case that he was recorded as disabled, see 42 U.S.C. § 12102(2)(B), a conclusion which Stone does not challenge on appeal.

rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We also review de novo the district court's application of collateral estoppel in summary judgment proceedings. Salguero, 366 F.3d at 1172.

Stone claims that the CSB hearing officer's findings establish that he is disabled for purposes of the ADA and that these findings, as affirmed in the two state court decisions, are binding on the defendants under the doctrine of collateral estoppel. We first consider the relevance of these findings under disability law and then whether they are entitled to preclusive effect.

**A**

In order to establish a prima facie ADA claim, Stone must show, among other things, that he is a disabled person within the meaning of the ADA. Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 878 (10th Cir. 2004). For ADA purposes, an individual is disabled if he is "regarded as having" "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A), (C). "A person is 'regarded as having' an impairment that substantially limits the person's major life activities when other people treat that person as having a substantially limiting impairment." Lanman v. Johnson County, 393 F.3d 1151, 1157 (10th Cir. 2004) (quotation omitted). Working qualifies as a major life activity. Id.

When "working" is the major life activity at issue in an ADA case, the term

"substantially limits" in § 12102(2)(A) means that the plaintiff must be

> significantly restricted in the ability to perform either <u>a class of jobs</u>
> <u>or a broad range of jobs in various classes</u> as compared to the
> average person having comparable training, skills and abilities. The
> inability to perform a single, particular job does not constitute a
> substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i) (emphasis added); <u>see also</u> <u>Sutton</u>, 527 U.S. at 491-92

(applying § 1630.2(j)(3)(i)).[2] A "class" of jobs is a set of jobs "utilizing similar

training, knowledge, skills or abilities," while a "broad range of jobs" refers to a

number of dissimilar jobs which the plaintiff is unable to perform. <u>EEOC v.</u>

<u>Heartway Corp.</u>, 466 F.3d 1156, 1164 (10th Cir. 2006) (quotation omitted).

**B**

Turning to the issue of collateral estoppel, we first must consider whether

any of the three decisions—those of the CSB hearing officer, the Denver District

_____

[2] The defendants argue that an ADA plaintiff must also establish that the employer's mistaken belief "was based on myth, fear, or stereotype" associated with disabilities. <u>Doebele v. Sprint/United Mgmt. Co.</u>, 342 F.3d 1117, 1133 (10th Cir. 2003) (internal quotation marks omitted). Our cases have never required, however, that this showing be made <u>as part of a plaintiff's prima facie</u> <u>case</u>. Rather, it has been incorporated into a later step in the <u>McDonnell Douglas</u> burden-shifting framework, as it is generally inferred once a plaintiff has shown that "the employer cannot articulate a non-discriminatory reason for the employment action." <u>See</u> 29 C.F.R. pt. 1630 app. (discussing "regarded as" requirements under § 1630.2(l)); <u>see also</u> <u>McDonnell Douglas Corp.</u>, 411 U.S. at 807 (distinguishing a plaintiff's initial burden to establish a prima facie case from her later burden to rebut an employer's proffered nondiscriminatory reason for the action); <u>Doebele</u>, 342 F.3d at 1133; <u>McKenzie v. Dovala</u>, 242 F.3d 967, 971 (10th Cir. 2001). Stone was not required to establish this additional element to succeed in raising a prima facie case of discrimination.

Court, and the Colorado Court of Appeals—are entitled to preclusive effect under federal law in an ADA suit. In considering this question, we rely in part on Title VII case law because the ADA shares Title VII's enforcement mechanism, 42 U.S.C. § 2000e-5. See 42 U.S.C. § 12117 (incorporating § 2000e-5); Thomas v. Contoocook Valley Sch. Dist., 150 F.3d 31, 39 n.5 (1st Cir. 1998) (applying Title VII case law on preclusion in ADA context for this reason).

Interpreting Title VII, the Supreme Court has held that decisions of state or local administrative bodies acting in a judicial capacity are not, by themselves, entitled to preclusive effect. See Univ. of Tenn. v. Elliott, 478 U.S. 788, 795-97 (1986) (reasoning that Congress intended to foreclose preclusive effect because § 2000e-5 instructs the EEOC to give only "substantial weight" to unreviewed state-agency decisions); see also Kremer v. Chem. Constr. Corp., 456 U.S. 461, 470 n.7 (1982) (explaining "that unreviewed administrative determinations by state agencies [charged with investigating state-law employment discrimination claims] . . . should not preclude . . . review [in federal court] even if such a decision were to be afforded preclusive effect in a State's own courts"). Yet in Kremer, the Court also held that nothing in Title VII repealed 28 U.S.C. § 1738's directive entitling state court determinations to preclusive effect in federal court. 456 U.S. at 469-76. Accordingly, a state court decision affirming a state agency determination is entitled to preclusive effect, so long as the state court proceeding provided the parties with a full and fair opportunity to litigate

-10-

the case.  Id. at 485; Bolling v. City & County of Denver, 790 F.2d 67, 68-69

(10th Cir. 1986) (per curiam).  Thus our review for collateral estoppel purposes in

a Title VII or ADA case is confined to the judgments of the state courts, and not

the underlying agency decision.  Because the district court failed to consider the

preclusive effect of the state court decisions, error resulted.[3]  The fact that the

judicial decisions here did not afford de novo review to the hearing officer's

decision does not affect their preclusive value.  See Kremer, 456 U.S. at 481 n.21

("There is no requirement that judicial review [of an administrative decision]

must proceed de novo if it is to be preclusive.").

    To determine the nature of the preclusive effect afforded to the state court

judgments, we look to the law of the particular state, in this instance, Colorado.

Bolling, 790 F.2d at 68.  Under Colorado law, collateral estoppel "operates to bar

relitigation of an issue that has been finally decided by a court in a prior action."

---

[3]    The district court relied on Elliott's conclusion that when a state agency
acts in a judicial capacity and "'resolves disputed issues of fact properly before it
which the parties have had an adequate opportunity to litigate,' its determinations
'should be accorded the same finality that is accorded the judgment of a court.'"
Aplt. App. at 325 (quoting Elliott, 478 U.S. at 799).  However, in Elliott, the
Court reached this conclusion in the context of a discussion of the preclusive
effect that unreviewed agency decisions have on claims brought under 42 U.S.C.
§ 1983, not under Title VII; the Court's Title VII analysis was separate and, in
fact, led to a contrary result.  See Elliott, 478 U.S. at 799 n.7 (explaining that
"Congress . . . may decide, as it did in enacting Title VII, that other values
outweigh the policy of according finality to state administrative factfinding").
Accordingly, preclusion under a § 1983 claim is different than under a Title VII
or ADA claim.  The latter requires a state court judgment, which becomes the
analytical focus of the inquiry.

Sunny Acres Villa, Inc. v. Cooper, 25 P.3d 44, 47 (Colo. 2001) (en banc). To

determine whether collateral estoppel applies to a particular issue, Colorado

courts consider whether:

> (1) The issue precluded is identical to an issue actually litigated and
> necessarily adjudicated in the prior proceeding; (2) The party against
> whom estoppel was sought was a party to or was in privity with a
> party to the prior proceeding; (3) There was a final judgment on the
> merits in the prior proceeding; (4) The party against whom the
> doctrine is asserted had a full and fair opportunity to litigate the
> issues in the prior proceeding.

Bebo Constr. Co. v. Mattox & O'Brien, P.C., 990 P.2d 78, 84-85 (Colo. 1999)

(en banc) (quotation omitted). As to the first element, an issue is "actually

litigated" if it is raised by the parties in the prior action, id. at 85, and it is

"necessarily adjudicated when a determination on that issue [is] necessary to a

judgment," id. at 86.

In addition, as the district court recognized, Colorado courts have approved

offensive use of collateral estoppel. See Antelope Co. v. Mobil Rocky Mountain,

Inc., 51 P.3d 995, 1003 (Colo. App. 2001). Offensive use of collateral estoppel is

discretionary due to fairness concerns regarding a defendant's incentive to

litigate, see id., but defendants here have not suggested that they did not have a

sufficient incentive to litigate, and the district court expressed no fairness

concerns.

One final principle of Colorado law informs our analysis. "[W]hen a party

has a full and fair opportunity to litigate an issue, the mere fact that the judgment

-12-

was incorrect does not affect its conclusiveness. Under such circumstances, it is not unfair to apply collateral estoppel simply because the prior judgment may be wrong." Cent. Bank Denver, N.A. v. Mehaffy, Rider, Windholz & Wilson, 940 P.2d 1097, 1104 (Colo. App. 1997); see also City of Thornton v. Bijou Irrigation Co., 926 P.2d 1, 83 (Colo. 1996) (en banc) (concluding that doctrine of collateral estoppel bars collateral attack on erroneous findings in earlier final judgment).

Applying these rules, we conclude that the two state court judgments are entitled to the same preclusive effect in Stone's federal ADA action that a Colorado state court would accord them, limited to the one issue that meets the four requirements set forth in Bebo—whether the Agency regarded Stone as disabled. As to that issue, we conclude that it is identical to that raised in his federal action, as the parties do not dispute that the City's personnel rules mirror ADA standards. Although the record does not contain the briefs filed in either of the state court proceedings, the decisions of those courts reflect that the Agency placed at issue whether the hearing officer's findings meet ADA requirements that the Agency regarded Stone as unable to perform "a class of jobs or a broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(i); see also Sutton, 527 U.S. at 491-92. Because the Agency clearly raised this issue, it was "actually litigated." See Bebo Constr. Co., 990 P.2d at 85. The issue also was "necessarily adjudicated" because its resolution was indispensable to each of the state court

judgments. See id. at 86. And there can be no legitimate dispute that the other three Bebo elements are met. Finally, even if the state judicial readings of the hearing officer's finding were incorrect, a matter on which we express no opinion, the federal district court was not at liberty to overlook their preclusive effect. See Cent. Bank Denver, N.A., 940 P.2d at 1104.

As to the remaining issues concerning liability—whether the Agency failed to articulate a nondiscriminatory reason for the refusal to transfer Stone or whether the Agency's proffered reasons were pretextual—we are unable to determine if either of those issues was actually litigated in the state courts. Again, the record does not contain the briefs, and the only discussion of these issues appears in the Court of Appeals' decision, which simply quotes the hearing officer's finding that after Stone established his prima facie case, "[t]he Agency . . . failed to establish, by a preponderance of the evidence, that it had any legitimate business reasons here." Even if we might view this limited reference as necessarily adjudicating whether the Agency proffered a legitimate, nonprextual reason, we cannot say that those issues were actually litigated by the parties. Accordingly, we conclude that, on the record before us, Stone may use offensive collateral estoppel only to establish that defendants regarded him as disabled, but not to establish that they failed to proffer a legitimate

nondiscriminatory reason for refusing to transfer him or that any reasons they did proffer were pretextual.[4]

## III

The judgment of the district court is **REVERSED**. The case is **REMANDED** for further proceedings consistent with this decision.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

[4] Under Colorado law, collateral estoppel also "bind[s] parties to an administrative agency's findings of fact and conclusions of law if the agency, while acting in a judicial capacity, resolved disputed issues of fact and the parties had an adequate opportunity to litigate those issues." Bebo Constr. Co., 990 P.2d at 85. However, under our reading of Elliott and Kremer, in a Title VII or ADA case we must look to the preclusive effect that state courts afford to court judgments. For purposes of federal law, it is immaterial that state courts also afford preclusive effect to agency decisions. Thus, we have considered only whether the state court judgments in this case meet the requirements of Bebo.