**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 12, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DONNA J. NEALEY,

      Plaintiff-Appellant,

v.

WATER DISTRICT NO. 1 OF
JOHNSON COUNTY, KANSAS,

      Defendant-Appellee.

No. 08-3144
(D.C. No. 2:06-CV-02237-CM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **MURPHY**, and **HARTZ**, Circuit Judges.

---

Donna J. Nealey appeals the district court's entry of summary judgment in

favor of her former employer, Water District No. 1 of Johnson County, Kansas

(WaterOne), on her claims under the Americans with Disabilities Act (ADA),

42 U.S.C. § 12101-12213; the Age Discrimination in Employment Act (ADEA),

29 U.S.C. §§ 621-634; and the Family and Medical Leave Act (FMLA), 29 U.S.C.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§§ 2601-54. Reviewing the district court's grant of summary judgment de novo and considering the evidence in the light most favorable to Ms. Nealey, we affirm. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007).

## BACKGROUND

Ms. Nealey began her employment with WaterOne in 1988 as a support clerk in the Engineering Department. By 1994 she was working as an administrative assistant to Dan Smith, who later became director of distribution. From 1994 to 2003, Mr. Smith gave Ms. Nealey positive performance appraisals, rating her as satisfactory or better.

While under Mr. Smith's supervision, Ms. Nealey had health problems, resulting in the need for occasional FMLA leave. Because of lung-cancer surgery on June 29, 2000, she took about 11 weeks of FMLA leave. In June 2002 she took a second 11-week FMLA leave of absence for neuropathic pain. Although Ms. Nealey exhausted her available FMLA leave by August 2002, WaterOne, with Mr. Smith's approval, provided an additional two months of leave. She returned to full-time work as Mr. Smith's administrative secretary in the fall of 2002.

In the spring of 2004 several circumstances combined to affect Ms. Nealey's employment situation. Ms. Nealey continued to have health issues. On March 29 an administrative-support clerk injected Ms. Nealey with Toradol®, a nonsteroidal anti-inflammatory drug prescribed for pain, in the bathroom at

WaterOne. Mr. Smith, unaware of the Toradol incident, informed Ms. Nealey on April 16 that he was frustrated with her absenteeism and was going to discuss her unsatisfactory attendance with individuals in the human-resources department. He drafted a memorandum to Ms. Nealey dated April 22 summarizing the effects of her unreliable attendance and stating that he was placing her on six-months probation as of April 22.

Meanwhile, the relationship between Ms. Nealey and the administrative-support clerk had deteriorated. On April 22 the clerk reported the Toradol incident to her supervisor, Mr. Smith, and members of the legal department. Mr. Smith did not send Ms. Nealey his memorandum concerning probation for absenteeism. Instead, Ms. Nealey was placed on paid administrative leave pending WaterOne's investigation into a possible violation of its drug-and-alcohol policy. Ms. Nealey hired an attorney.

On May 24, WaterOne informed Ms. Nealey and her attorney that it had found no policy violation arising from the Toradol injection. It determined, however, that Mr. Smith had lost confidence in Ms. Nealey and that he should not continue as her direct supervisor. An individual younger than Ms. Nealey was hired as Mr. Smith's administrative secretary.

Ms. Nealey's attorney and WaterOne continued to negotiate her return to work, with the attorney demanding that Ms. Nealey be restored to her former position. WaterOne responded by offering two alternative positions. It also

provided information about long-term disability benefits available from its insurance carrier.

Eventually, Ms. Nealey accepted WaterOne's offer of an administrative assistant/analyst position at her current pay grade, reporting to Greg Johnson, who was supervised by Mr. Smith. She started work on September 7, 2004. The next day, she left work early and began an FMLA leave of absence until October 2004. Later in September, Ms. Nealey filed an EEOC charge alleging age and disability discrimination, along with FMLA interference and retaliation. Without keeping a similar log for other employees and on advice of counsel, Mr. Johnson began a log of incidents relating to Ms. Nealey.

Ms. Nealey was unhappy with the duties and conditions of her new job. From May to December 2005 she requested and received periods of FMLA leave for various reasons, including pneumonia. She informed WaterOne that her doctor had prescribed narcotic medication, but that he had not placed any restrictions on her work duties. Beginning in July 2005, Johnson logged a number of reports of Ms. Nealey's sleeping at work. There were descriptions of her snoring at her desk, sleeping standing up, sleeping with her finger on the computer keyboard (which caused a beeping noise), and acting disoriented and unresponsive when a fire alarm sounded. In one remarkable occurrence reported by a benefits administrator, Ms. Nealey fell asleep during a private session

concerning her FMLA leave. A video filmed by Mr. Johnson showed Ms. Nealey with her head on her desk for several minutes.

On several occasions Ms. Nealey was sent home and on other occasions she was counseled to remain at home if she could not stay awake and alert. Ms. Nealey, however, often denied that she had been asleep, asserting that she had been listening with her head down, closing her eyes to focus, or practicing biofeedback. Mr. Johnson's review of Ms. Nealey for April 22 through October 27, 2005, commented on "numerous errors or omissions," and noted that she often "appear[ed] sleepy and confused" and had been found "asleep at her desk on several occasions." *Id.* at 751-52. Her 2006 goals were to "[i]mprove accuracy of work," and "[n]o sleeping during work day." *Id.* at 752.

The day after her review, Ms. Nealey's counsel sent an e-mail asserting that WaterOne's practice of sending her home amounted to retaliation. WaterOne retained a law firm to investigate the complaint. After interviewing the persons involved and viewing a video showing Ms. Nealey with her head on her desk for several minutes, the firm's investigator found that Ms. Nealey had been either sleeping or unable to function at an acceptable level. His conclusion was that WaterOne's employees made sensible decisions in dealing with an employee who could not perform her duties.

Reports of Ms. Nealey sleeping at work continued into 2006. She complained to WaterOne about alleged discrimination and retaliation in sending

her home involuntarily and in joking by fellow employees about sleeping on the job. WaterOne conducted investigations into Ms. Nealey's allegations but found no wrongdoing.

Mr. Smith sent an e-mail to human resources describing the frustration of Mr. Johnson in dealing with Ms. Nealey. Mr. Smith opined that Ms. Nealey "ha[d] done a masterful job . . . to manipulate all of us into a[n] impossible situation" and "ha[d] the District doing investigation after investigation for the most trivial incidents or comments." *Id*. at 757. In February some unidentified WaterOne managers attended audio conferences on "Terminating Employees Without Getting Sued" and "FMLA Abuse: Fight Back and Win." *Id.* at 569-70.

On March 7, 2006, Mr. Johnson and the WaterOne director of human resources both observed Ms. Nealey sleeping on the job. They met with her and reminded her of previous warnings about sleeping on the job. At the end of the meeting they gave Ms. Nealey a disciplinary-action form and suspended her without pay through March 9. On March 10 she disclosed a new medical condition that would require surgery and medical leave. On March 14 Ms. Nealey was again seen asleep at her workstation. She was suspended without pay until further notice. By letter dated March 17, WaterOne advised her that it was terminating her employment as of March 31.

Ms. Nealey filed her lawsuit on June 8, 2006. The district court granted summary judgment to WaterOne on all claims. Ms. Nealey now appeals the district court's decision.

**DISCUSSION**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On appeal Ms. Nealey asserts error in the district court's disposition of her claims of age discrimination under the ADEA; disability discrimination under the ADA; retaliation for her exercise of rights under the FMLA, the ADEA, and the ADA; and interference with the FMLA. Ms. Nealey's only EEOC claim was filed in September 2004, so her discrimination claims are limited to events occurring by that date. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) ("[A]ny adverse employment actions occurring after [plaintiff] submitted [her] administrative charge . . . would not fall within the scope of [her] charge.").

Because Ms. Nealey lacks direct evidence of age or disability discrimination or of retaliation under the FMLA, the ADEA, or the ADA, these claims are properly analyzed under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1106 (10th Cir. 2008) (ADEA discrimination);

*Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1201 (10th Cir. 2008) (ADEA retaliation); *Proctor v. United Parcel Serv.,* 502 F.3d 1200, 1208 (10th Cir. 2007) (ADA retaliation); *Jones,* 502 F.3d at 1189 (ADA discrimination); *Metzler v. Fed. Home Loan Bank of Topeka,* 464 F.3d 1164, 1170 (10th Cir. 2006 ) (FMLA retaliation). Under this scheme the plaintiff must initially establish a prima facie case and, if she does so, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action." *Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) (age discrimination) (internal quotation marks omitted). "Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (internal quotation marks and alteration omitted). For FMLA interference claims, the analysis is different and will be discussed later.

**ADEA Claim**

According to Ms. Nealey, WaterOne discriminated against her based on age in 2004 by investigating the Toradol incident and refusing to let her return to her previous position as Mr. Smith's administrative secretary. The parties agree that she established a prima facie case and that WaterOne stated legitimate reasons for its actions. They part ways, however, on whether Ms. Nealey met her burden of producing evidence from which one could infer that WaterOne's

reasons for changing her position were pretextual. Ms. Nealey asserts that pretext is established by (1) her vindication in the investigation of the Toradol incident; (2) the "after-the-fact" nature of Mr. Smith's "loss of confidence" explanation; and (3) Mr. Johnson's keeping of a log on her work activities.

On the question of pretext, "we consider the facts as they appeared to the person making the decision, and we do not second-guess the employer's decision even if it seems in hindsight that the action taken constituted poor business judgment." *Riggs v. AirTran Airways*, 497 F.3d 1108, 1119 (10th Cir. 2007). The court does not "act as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments." *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (internal quotation marks omitted). WaterOne has explained the procedure and results of the alcohol-and-drug-policy investigation and also the basis for its decision to transfer Ms. Nealey from the position of Mr. Smith's confidential assistant. Further, Mr. Johnson's log did not exist until well after the events Ms. Nealey identifies as discriminatory. Viewing the evidence as a whole, we see no genuine issue of material fact on the issue of whether WaterOne's decision was a pretext for age discrimination.

**ADA Discrimination Claim**

Ms. Nealey claims that WaterOne's 2004 actions likewise violated the ADA. An essential element of a prima facie ADA case is a showing that the

plaintiff is a disabled person within the meaning of that statute. *Jones*, 502 F.3d at 1189. Ms. Nealey asserts that she is protected by the ADA because WaterOne regarded her as having an impairment substantially limiting the major life activity of working. For ADA purposes, an individual is disabled if he is "regarded as having" "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A), (C). "[A] person is 'regarded as having' an impairment that substantially limits the person's major life activities when other people treat that person as having a substantially limiting impairment." *Lanman v. Johnson County*, 393 F.3d 1151, 1157 (10th Cir. 2004) (internal quotation marks omitted). Working qualifies as a major life activity. *Id.*

For Ms. Nealey to survive summary judgment on this claim, she "must present some evidence that [WaterOne] believed that [s]he was significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1086 (10th Cir. 2008) (internal quotation marks omitted). "[O]ur focus is on [WaterOne's] subjective state of mind: did [it] mistakenly believe that [Ms. Nealey] was substantially limited in performing a major life activity?" *Id.*

Ms. Nealey argues that her evidence satisfies this standard. She points to events that occurred in 2004: WaterOne's drug-and-alcohol-policy inquiry,

-10-

approval of her requests for FMLA leave, and provision of information on disability coverage. In addition, she relies on events well after the decision not to let her return to work for Mr. Smith: later FMLA leave, Mr. Johnson's maintenance of a log after she began working for him, and a human-resources employee's expressed concern about Ms. Nealey's capacity to work in December 2005.

We are not persuaded. The record does not support an inference that in 2004 WaterOne perceived Ms. Nealey as being significantly restricted from performing a class of jobs or range of jobs. Most tellingly, WaterOne consistently offered Ms Nealey other full-time positions (at the same level of pay and benefits as her previous position) after she was told that she could not return to work for Mr. Smith. Neither the approval of her FMLA requests nor the suggestion of disability insurance can in themselves support an inference that WaterOne regarded her as disabled for ADA purposes. *See Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1219-20 & n.8 (10th Cir. 2007). Finally, we do not believe that the events after Ms. Nealey started at her new position in any way supports her contention that WaterOne believed her to be disabled in 2004. In sum, Ms. Nealey's evidence does not establish genuine questions of material fact relating to her prima facie case of disability discrimination.

**Retaliation Claims**

Ms. Nealey also makes a series of retaliation claims, asserting that WaterOne retaliated against her for seeking FMLA leave and for filing claims of age and disability discrimination with the EEOC. For a prima facie case of retaliation, Ms. Nealey must show that "(1) she engaged in protected [activity]; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *Fye v. Okla. Corp. Com'n,* 516 F.3d 1217, 1227 (10th Cir. 2008) (internal quotation marks omitted). No causal connection is apparent between Ms. Nealey's filing age and disability charges and the adverse employment actions that took place over a year later. The ADEA and ADEA retaliation claims fail for lack of a prima facie case.

As for FMLA retaliation, temporal proximity exists between Ms. Nealey's leave requests and her termination. Ms. Nealey therefore established a prima facie case. WaterOne then satisfied its burden to articulate a legitimate reason for its actions by pointing to her sleeping on the job. As a result, Ms. Nealey had to show pretext. "To raise a fact issue of pretext," Ms. Nealey must "present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive." *Metzler*, 464 F.3d at 1172. "[T]his court has refused to allow even very close temporal proximity to operate as a proxy for the evidentiary requirement

-12-

that the plaintiff demonstrate pretext." *Id.* (internal quotation marks and alteration omitted).

As additional circumstantial evidence of pretext, Ms. Nealey stresses WaterOne's knowledge that she was taking pain medication that could cause drowsiness and Mr. Johnson's "keeping a secret log on her – *and only her.*" Aplt. Br. at 29. But these two facts, even considered in conjunction with evidence argued as pretext in other sections of Ms. Nealey's brief, do not suggest that WaterOne's expressed reasons are unworthy of credence. Ms. Nealey has not raised a genuine issue of material fact undermining WaterOne's stated reasons for disciplining her and terminating her employment.

**FMLA Interference Claim**

"Under the FMLA's terms, covered employees are entitled "to take reasonable leave for medical reasons. . . ,' and affected employers may not interfere with or discriminate against an employee seeking to exercise those rights." *Orr v. City of Albuquerque,* 531 F.3d 1210, 1213 (10th Cir. 2008) (quoting 29 U.S.C. §§ 2601(b)(2), 2615(a)). Ms. Nealey asserts that she has made a sufficient showing that WaterOne interfered with her FMLA rights when it disciplined and discharged her.

To prevail on this theory, she "must demonstrate: (1) that . . . she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with . . . her right to take FMLA leave, and (3) that the employer's action was

-13-

related to the exercise or attempted exercise of [her] FMLA rights." *Metzler*, 464 F.3d at 1180 (alteration and internal quotation marks omitted). The employer's actual intent is not relevant. *Id.*

Ms. Nealey has demonstrated the first two elements of her claim--she was entitled to FMLA leave and she was disciplined and discharged before she could take all her accrued leave. Thus, our analysis centers on whether she has come forward with evidence of a causal relationship between her termination and her FMLA leave. Ms. Nealey argues that she "has easily raised genuine issues of material fact for a jury on . . . her claim." Aplt Br. at 28. But the record shows that WaterOne consistently authorized extensive FMLA leave over the course of Ms. Nealey's employment, and that she was frequently advised to take FMLA leave rather than sleep on the job. Moreover, the record of poor performance (sleeping on the job) was remarkable. An employee who requests FMLA leave has "no greater protection against . . . her employment being terminated for reasons not related to . . . her FMLA request than . . . she did before submitting the request" and "has no greater rights than an employee who remains at work." *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998). We do not think that it would be reasonable to infer from the record in this case that Ms. Nealey was fired because she requested or took FMLA leave. Summary judgment is the appropriate disposition of Ms. Nealey FMLA-interference claim.

-14-

## CONCLUSION

We AFFIRM the judgment of the district court.

Entered for the Court


Harris L Hartz
Circuit Judge