17-0936-cv
*Fox v. Costco Wholesale Corporation*

# In the
# United States Court of Appeals
# For the Second Circuit

August Term, 2017

Submitted: January 10, 2018
Decided: March 6, 2019

Docket No. 17-0936-cv

CHRISTOPHER FOX,

*Plaintiff - Appellant*

V.

COSTCO WHOLESALE CORPORATION,

*Defendant - Appellee.*

Appeal from the United States District Court
for the Eastern District of New York
No. 2:15-cv-439 – Denis R. Hurley, *Judge.*

Before:      JACOBS, HALL, and DRONEY, *Circuit Judges.*

Plaintiff-Appellant Christopher Fox appeals from an order of the Eastern District of New York dismissing his complaint on summary

judgment. Fox, who has suffered from Tourette's Syndrome and Obsessive-Compulsive Disorder since birth, filed the instant action against his longtime employer, Costco Wholesale Corporation, for disability discrimination under the Americans with Disabilities Act and New York State Human Rights Law. He asserted claims for hostile work environment, disparate treatment, failure to accommodate, and retaliation. The district court granted summary judgment to Costco on all of Fox's claims.

We affirm the judgment of the district court dismissing Fox's disparate treatment, failure to accommodate, and retaliation claims. We hold, however, that Fox's hostile work environment claim is cognizable under the ADA, and with respect to that claim, we find there are disputes as to material facts. It was error, therefore, to enter summary judgment as to Fox's hostile work environment claims.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

-------

JONATHAN A. TAND, Jonathan A. Tand & Associates, Garden City, New York, *for Plaintiff-Appellant*.

LORIE E. ALMON, Paul H. Galligan, Ephraim J. Pierre, *on the brief*, Seyfarth Shaw LLP, New York, New York, *for Defendant-Appellee*.

-------

HALL, *Circuit Judge*:

This is an appeal from a judgment entered on March 9, 2017, in the Eastern District of New York (Hurley, *J.*), granting summary judgment in favor of Defendant-Appellee Costco Wholesale Corp. ("Costco") *in toto*.

Plaintiff-Appellant Christopher Fox ("Fox") has worked at Costco for 21 years. He has suffered from Tourette's Syndrome ("Tourette's") and Obsessive-Compulsive Disorder ("OCD") since birth.

Fox brought claims against Costco under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 *et seq.*, and New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, alleging hostile work environment, disparate treatment, failure to accommodate, and retaliation. The district court determined that a rational fact-finder could not find evidence in the record to support sufficiently any of Fox's theories of recovery. We affirm the district court's judgment as to Fox's disparate treatment, failure to accommodate, and retaliation claims. As to Fox's hostile work environment claim, we reach a contrary conclusion.

This Circuit has previously assumed, without deciding, that hostile work environment claims are cognizable under the ADA. *See, e.g.*, *Robinson v. Dibble*, 613 F. App'x 9, 12 n.2 (2d Cir. 2015) (summary order) (assuming without deciding that plaintiff may bring a hostile work environment claim under the ADA when, in any event, the claim could not survive summary judgment). We now join our sister Circuits and hold that hostile work

3

environment claims are cognizable under the ADA. We also determine there is adequate evidence in the record for Fox's hostile work environment claim to survive summary judgment. We thus affirm in part and vacate in part the judgment of the district court and remand for further proceedings.

**I.**

Fox started working for Costco's Holbrook, New York warehouse in 1996. During his time with Costco, Fox worked on the floor crew, as an Assistant Cashier, Cashier, and Greeter. In June 2013, the Holbrook Costco got a new General Manager, Larry Resnikoff ("Resnikoff"). Assistant Manager Glenn Johnson ("Johnson") reported to Resnikoff. Fox's employment discrimination claims stem from the stress he suffered at Costco during this change in management.

While working as a Greeter under the new management, Fox was reprimanded twice by Johnson, who was not his supervisor. Johnson reprimanded Fox for leaving the Costco entrance area when Fox went to move a customer cart outside, and instructed Fox not to leave the entrance area for any reason. Johnson also reprimanded Fox for leaving a cart

unattended in front of the freezers instead of taking it with him. Johnson, however, took no formal disciplinary action against Fox.

Costco's management received two customer complaints about Fox's behavior in 2013 and 2014. In 2013, a Costco member felt that Fox's comment that she looked beautiful with her pocketbook was inappropriate and called Costco to report the incident. When Resnikoff addressed the incident with him, Fox admitted to speaking to the Costco member but claimed that he did not mean to offend her. Resnikoff informed Fox he would be terminated if another similar complaint were received.

In 2014, Fox apparently told a different Costco member that she was "the love of [his] life." J. App'x at 210. Resnikoff spoke to Fox about this complaint and asked him to write down what happened. Fox did not confirm or deny that the incident occurred, but he wrote in his statement, "I might on occasion say something nice that might offend someone regardless if they are having a bad day or not. I can't always help what I say." *Id*. at 211. Resnikoff suspended Fox for three days without pay and transferred him to an Assistant Cashier position, where he would have less direct contact with members. Neither Fox's pay nor his benefits were reduced as a

result. Fox understood that the change in his position was in lieu of termination. During his deposition, Fox stated that prior to these two investigations, Resnikoff made disparaging comments regarding Fox's disability, including "I cringe every time I walk by you" and "[Y]ou finally did it." *Id.* at 206–07.

Before starting as an Assistant Cashier, Fox was granted one month of medical leave while his neurologist adjusted his medications. He started as an assistant cashier after that leave. There is no evidence that positions other than Assistant Cashier were available at the time Fox returned to work. At some point in 2014, however, Resnikoff offered Fox a position as a Stocker. Fox declined to take it.

As part of Fox's neurological condition, he would often touch the floor before moving and would cough when he would feel a verbal tic come on in order to prevent others from hearing him swear. Fox testified that once he began his position as an Assistant Cashier, other Costco employees mocked him for his Tourette's and OCD. In his deposition, Fox described how certain Costco employees would make "hut-hut-hike" remarks to mimic Fox's verbal and physical tics. Fox also testified that these comments

6

"were audible to the managers of the Holbrook warehouse from their position on the warehouse's podium," and "happened in plain view of the Supervisors and the Front End Managers and nothing was ever said." *Id*. at 189, 72; *see also id.* at 76, 112–13. Fox testified further that these types of comments happened for "months and months" and "whenever" he would experience tics. *Id*. at 112–13. Johnson, on the other hand, testified that he was unaware of anyone saying "hut-hut-hike."

During March 2014, Fox asked his supervisor Janine DiCandia ("DiCandia") for a break to go home and take his medication. According to Fox, DiCandia did not find him a replacement, and he had to ask again. It took several hours from his initial request until he was permitted to go home. Also during March, Fox asked his supervisor Colin Campbell ("Campbell") for permission to take his break so he could go to the pharmacy and have a prescription re-filled; Campbell told him he could not because he had used his breaks for the day. Fox claims he never received his last break that day.

Fox decided to e-mail Costco's CEO Craig Jelinek ("Jelinek") on March 29, 2014, to explain his conditions, his long-time employment with

Costco, the change he had observed in the Holbrook Costco management style, and the fact that the change in atmosphere at Costco caused him "stress," which "aggravate[ed] [his] tourettes," requiring him to take a month of medical leave. *Id.* at 169. Fox also wrote Jelinek about the two incidents when he was denied his break. Fox did not mention the "hut-hut-hike" comments to Jelinek.

Although this was not the formal Costco complaint procedure provided in the Costco employee handbook, Jelinek, nonetheless, commenced an investigation into Fox's complaints at the Holbrook store. Pursuant to Jelinek's investigation, Resnikoff met with Fox and all the other employees involved in the break incidents. At the end of the investigation, Campbell was transferred to another position. It is unclear if DiCandia received any sanctions. Fox does not dispute that his "concerns were put at ease" by this investigation. *Id*. at 216.

Nevertheless, Fox claims that after he sent the e-mail to Jelinek and that investigation took place, Costco employees continued to treat him poorly because of his disability. These mistreatments included: being deprived of his time sheets (which he needed to complete his job

8

responsibilities), although he was not reprimanded for not having them; being reprimanded for leaving his work station to drink water, while another employee in Fox's position was not reprimanded for leaving his work station; being later reprimanded for refusing to leave his work station; cashiers complaining of their ring times "going down" when he was assisting them, and one cashier complaining "[a]t least one of us is doing our job" and that Fox was annoying her, *id*. at 112; being reprimanded for waving customers to his register instead of calling to them and, when Fox explained he had been instructed not to scream, the manager responding, "You had no problems screaming earlier," *id*. at 87. Management was made aware of the comments made to Fox by cashiers. Afterwards, Fox was instructed not to work with one of the complaining cashiers, and the other apologized.

In November 2014, Fox had a panic attack while on the job and had to be escorted out of the building by EMTs.[1] Fox cannot recall much of what happened. There is evidence in the record that he started acting incoherently and was asked by a supervisor if he wanted to go to the hospital. He replied

---

[1] Fox does not allege that his panic attack was caused by his co-workers' comments or the hostile work environment.

that he did. Since that anxiety attack, Fox has been on indefinite medical leave.

Fox filed a complaint with the New York State Division of Human Rights in August 2014. It was later administratively closed because Fox "wishe[d] to pursue [the] matter in Federal District Court." *Id*. at 30. Fox filed the instant lawsuit on January 22, 2015.

**III.**

"We review *de novo* the award of summary judgment, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences and resolving all ambiguities in its favor." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (internal quotation marks omitted). Summary judgment is appropriate so long as there is no genuine dispute of material fact. Fed. R. Civ. P. 56.

**IV.**

Applying this standard, we affirm the district court's grant of summary judgment in favor of Costco with respect to Fox's claims alleging disparate treatment, retaliation, and failure to accommodate. We evaluate disparate treatment discrimination claims under the *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973) burden shifting framework. *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013). Under this standard, a plaintiff must first establish a *prima facie* case of discrimination under the ADA, after which the burden of proof shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the" employer's conduct. *McDonnell Douglas*, 411 U.S. at 802. If the employer successfully meets its burden, the plaintiff must then "demonstrate that [the employer's] assigned reason . . . was a pretext or discriminatory in its application." *Id*. at 807. To satisfy the first step of the *McDonnell Douglas* burden shifting framework and establish a *prima facie* case of discrimination based on disparate treatment, Fox "must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *McMillan*, 711 F.3d at 125. The parties do not dispute that Costco is subject to the ADA or that Fox is disabled within the meaning of the ADA.

11

An adverse employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities and might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002) (alternation in original) (internal quotation marks omitted). Harsh reprimands do not rise to the level of an adverse employment action where there is no tangible effect on employment. *See Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002).

Fox first argues that four verbal reprimands—for leaving his post as a greeter, leaving a custodial cart unattended, leaving his register to retrieve water, and yelling—were adverse employment actions. We disagree. None of those reprimands resulted in disciplinary action or a reduction in salary, benefits, or other responsibilities.

Fox next argues that the terms and conditions of his employment were affected by the systematic and continuous discrimination he suffered at Costco which resulted in his transfer from Greeter to Assistant Cashier, a job Fox could not perform because of his disability. Fox maintains that this transfer significantly worsened his symptoms, making it impossible for him to perform that job.

Fox has not adduced any evidence that he was demoted, received decreased benefits, worse job duties, or anything else that affected his employment with Costco. *See id.* Fox's transfer from Greeter to Front-End Cashier did not constitute a demotion, decrease in benefits, or decrease in salary. *See id.*

Finally, Fox's claim that he was denied breaks to go home and take his medicine and go to the pharmacy, even if related to his disability, do not rise to the level of a material adverse employment action. *See Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (holding that an adverse employment action must be more than just disruptive). Being unable to take a break twice is not the type of demotion, pay cut, or significantly

diminished responsibility that are the tell-tale signs of material adverse employment actions. *See id.*

Fox also has not demonstrated that he was constructively discharged. His claim, therefore, does not satisfy the adverse employment action requirement. *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996) (explaining that "[c]onstructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily"); *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993). Fox has not shown that he "actually resigned," but rather he is on indefinite medical leave and has failed to make a *prima facie* case for disparate treatment. *See Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016).

Finally, Fox failed to introduce evidence that the alleged material adverse employment actions he suffered (the reprimands, position transfer, and lack of breaks) were the result of his disability.

## V.

Fox's retaliation claims were also properly dismissed because he has not introduced evidence that he suffered an adverse employment action

14

after—and causally connected to—his engagement in a protected activity. *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). Fox must show that he engaged in a protected activity, that he suffered an adverse employment action, and that a causal connection exists between that protected activity and the adverse employment action. *Id.*

The parties do not dispute that Fox engaged in a protected activity when he emailed Jelinek and filed a complaint with the New York State Division of Human Rights. Nor do they dispute that Costco was aware of both activities. Fox argues three adverse employment actions were taken against him as a result of the email and administrative complaint. First, he claims Resnikoff "laugh[ed]" and brushed off the email complaint to Jelinek. J. App'x at 220. Second, he alleges his reassignment to Assistant Cashier was an adverse employment action. And finally, Fox claims the hostile work environment he was subjected to was an adverse employment action. For the reasons explained above, however, none of this constitutes an adverse employment action. But even if one did, Fox fails to provide sufficient evidence of a causal nexus between Fox's protected activity and the alleged adverse employment actions he suffered.

15

## VI.

Fox's failure to accommodate claims were also properly dismissed by the district court. In order for these claims to survive, Fox must demonstrate that: (1) he is disabled within the meaning of the ADA; (2) his employer is a covered entity; (3) he could perform the essential functions of his job with an accommodation; and (4) the defendants refused to provide such an accommodation despite being on notice. *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96–97 (2d Cir. 2009).

Fox never asked for an accommodation while employed as a Greeter or as an Assistant Cashier. Fox's claim seems to be that Costco had to know that his condition would be worsened by his job as Assistant Cashier. But, Fox had previously served as an Assistant Cashier during his time at Costco. There is no reason for Costco to have known Fox could not later perform that same job. What is more, he has failed to introduce other evidence that Costco knew or should have been aware that his condition would be affected by that job transfer. Once in the Assistant Cashier position, Fox never requested that he be transferred again. In fact, Costco offered Fox a

16

position in the stockroom and Fox declined it. Fox has not identified a reasonable accommodation that Costco refused to provide.

## VII.

Turning to Fox's claim that he was subject to a hostile work environment, we hold that hostile work environment claims are cognizable under the ADA. We hold, moreover, that there was evidence in the record before the district court sufficient to make out Fox's hostile work environment claim, such that his claim survives summary judgment.

## A.

We have previously assumed without deciding that hostile work environment claims are cognizable under the ADA. *See, e.g.*, *Fleiger v. E. Suffolk BOCES*, 693 F. App'x 14, 19 (2d Cir. 2018) (summary order) (assuming the plaintiff could bring a hostile work environment claim under the ADA where such claims failed at summary judgment in any event). Moreover, a number of courts that have considered this question have found such claims to be cognizable under the ADA. *See Lanman v. Johnson Cty.*, 393 F.3d 1151, 1155–56 (10th Cir. 2004); *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003); *Flowers v. S. Reg'l Physicians Servs., Inc.*, 247 F.3d

17

229, 232–35 (5th Cir. 2001); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 175–76 (4th Cir. 2001).

We are persuaded by our sister Circuits, which have reasoned that claims for hostile work environment are actionable under the ADA. Under the ADA, a covered employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to . . . *terms, conditions, and privileges of employment*." 42 U.S.C. § 12112(a) (emphasis added). "Congress borrowed this language from Title VII, which similarly provides that it 'shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, *terms, conditions, or privileges of employment*.'" *Lanman*, 393 F.3d at 1155 (quoting 42 U.S.C. § 2000e-2(a)(1)) (emphasis in original). "Thus, when Congress included the phrase 'terms, conditions, and privileges of employment' in the ADA, it was using a legal term of art that prohibited a broad range of employment practices, including workplace harassment." *Shaver*, 350 F.3d at 720.

"[I]n construing a statute, we must look at how its text was understood at the time that it was passed." *Id*. When the ADA was enacted,

18

the Supreme Court had twice concluded that Title VII provided for hostile work environment claims. *See Lanman*, 393 F.3d at 1155–56. By borrowing Title VII's language, Congress suggested that it intended for the ADA to be coextensive, at least in this respect, with Title VII. This view is bolstered by the shared purpose of Title VII and the ADA to prevent discrimination against a defined class of people. *See, e.g., id.*

"Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—" it follows that disabled Americans should be able to assert hostile work environment claims under the ADA, as can those protected by Title VII under that statute, *Gen. Motors*, 247 F.3d at 176, and we here so recognize.

**B.**

To prevail on a hostile work environment claim, Fox must show "(1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373

(2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). Although the victim must subjectively perceive the conduct as abusive, the misconduct shown also must be "severe or pervasive enough to create an objectively hostile or abusive work environment." *Id.* at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Even an isolated act may be so serious that it requires the conclusion that the terms and conditions of employment were altered. *Id.* A plaintiff alleging a hostile work environment claim under the ADA, therefore, "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Id.* (internal quotation marks omitted). Courts look to the totality of the circumstances to determine whether a plaintiff has met this burden, including proof of "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance." *Harris*, 510 U.S. at 23.

The record here supports a finding that Fox believed the work environment at the Holbrook Costco to be abusive. The parties do not dispute that; the issue is whether the work environment was objectively abusive, and, if so, whether the abusive conduct can be imputed to Costco.

The times Fox was reprimanded—for leaving the Costco entranceway, leaving behind a cart, leaving his register to retrieve water, and yelling—do not support his hostile work environment claims. Legitimate reprimands by an employer are not abuse. Nor are the disciplinary actions taken against Fox in response to complaints of Costco members evidence supporting this claim. Resnikoff conducted his investigation in accordance with Costco's company policies, and he concluded based on his interview with Fox that both customer complaints constituted "major" violations.

Fox's "hut-hut-hike" allegations and his descriptions of them, however, raise a material issue of fact as to whether Costco employees engaged in ongoing and pervasive discriminatory conduct. We disagree with the district court's assessment of that evidence because we must consider it in the light most favorable to the plaintiff. *Jaffer*, 887 F.3d at 114;

21

*see* J. App'x at 245 (opinion of the district court explaining that "the lack of probative evidence regarding the alleged persistence of the 'hut-hut-hike' comments also means a rational fact-finder would be unable to determine whether they 'amount to discriminatory changes in the terms and conditions of employment sufficient to meet the threshold of severity or pervasiveness'"). During Fox's deposition he stated:

> So instead of F-word, I went like that (grunting) and they'd say 'hut-hut-hike,' and I heard from the indoor[s] so they were mocking my disability. *'Cause whenever I said it, they said 'hut-hut-hike,'* so I don't recall exactly who was saying it. I have good idea of who was saying it, like Mike Smeja, the Fabianos, or I knew who was saying it and was laughing. But I knew it was a lot of the morning crew who was make fun of that . . . . You know, *this went on for months and months; it went on for a period of time.*

J. App'x at 112–13 (emphasis added). Fox also testified that the "hut-hut-hike" comments "were audible to the managers of the Holbrook warehouse from their position on the warehouse's podium," J. App'x at 189, *see also id.* at 112–13, and "happened in plain view of the Supervisors and the Front End Managers and nothing was ever said," *id.* at 72.

The district court had a different view of the record. To avoid summary judgment, the court concluded that Fox needed to introduce

22

"evidence regarding the number of times the comments were made per shift, week and/or month" to show that the "hut-hut-hike" comments pervaded Fox's working environment. *Id*. at 245.

The district court demanded too much of Fox. Fox is not required to list the shift, week, or month to be able to present this issue to a jury. *See Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 84 (2d Cir. 2009). Because Fox identified specific comments—his co-workers mocking his Tourette's by repeating "hut-hut-hike," presumably while touching the floor—and because he testified that "whenever I said [the F word], they said 'hut-hut-hike'" for "months and months," Fox has provided evidence sufficient to meet his burden to demonstrate pervasiveness. *See id.* On Fox's evidence at this stage, we hold, a reasonable fact finder could conclude that the "hut-hut-hike" comments made for months by co-workers when Fox experienced verbal tics were sufficiently severe and pervasive to change the conditions of Fox's employment. *See Perry*, 115 F.3d at 149. Since the phrase "hut-hut-hike" is borrowed from football, and Fox alleges that he often touched the floor when he suffered from verbal tics, presumably resembling a three-point stance, we can fairly infer that the phrase "hut-hut-hike" was

mockery of his disability as opposed to, for example, discussing last night's game or motivating each other to get going.

In addition, and crucial to our analysis, Fox introduced evidence that his supervisors witnessed this conduct for "months and months" and did nothing, demonstrating a specific basis for imputing the objectionable conduct to Costco. *Alfano*, 294 F.3d at 373. Thus, Fox has met his burden to defeat Costco's motion for summary judgment on his hostile work environment claim.

We express no opinion as to the availability of Costco's affirmative defense to these claims, raised in a footnote in its appellate brief. *See* Appellee's Br. at 28 n.5 ("Even assuming Plaintiff could establish his claim that he was subjected to a hostile work environment based on his disability, Costco has established an affirmative defense to the alleged hostile work environment/harassment in that: (1) it exercised reasonable care to prevent and correct promptly any disability-harassing behavior; and (2) Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by Costco to avoid harm."). Fox acknowledges that he did not follow formal Costco complaint procedures and that his email to

Jelinek did not even reference the "hut-hut-hike" comments. Arguments raised only in footnotes, however, as Costco's argument is here, are not preserved. *United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993).

In closing this analysis, we note that teasing in the workplace is not uncommon, and in most instances probably not actionable. Stuttering is mimicked; the overweight are called names; acne, baldness, and height are mentioned for a laugh. All of this can be hurtful. But mockery of overt features does not necessarily support damages, and the fact that Fox was mocked for the manifestations of his disability rather than other overt features does not bear on whether the workplace environment was objectively abusive. Here, however, viewing the evidence in the light most favorable to Fox, Fox has raised an issue of fact as to whether the frequency and severity of the mockery rise to the level of an objectively hostile work environment.

## VIII.

Because NYSHRL claims are analyzed as ADA claims, Fox's state law claims for disparate treatment, retaliation, and failure to accommodate were

properly dismissed. His state law hostile work environment claim is to be reinstated on remand.

## IX.

For the foregoing reasons, the judgment of the district court is AFFIRMED IN PART, VACATED IN PART, and REMANDED for further proceedings consistent with this opinion.