Telesford v. NYC Dep't of Ed.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of September, two thousand twenty-three.

PRESENT:
>  JOHN M. WALKER, JR.,
>  DENNY CHIN,
>  BETH ROBINSON,
>    *Circuit Judges.*

_____

Edgar D. Telesford,

>  *Plaintiff-Appellant*,

>  v.                                                              No. 21-227

New York City Department of Education,

>  *Defendant-Appellee*,

Malik Small, Joyce Stallings-Harte,

>  *Defendants*.

_____

FOR PLAINTIFF-APPELLANT:                         AMIRA PRIVOTT-YEISER, Bronxville, NY, *only at argument*.

EDGAR D. TELESFORD, *pro se*, Brooklyn, NY.

FOR DEFENDANT-APPELLEE:                         JESSE A. TOWNSEND, Assistant Corporate Counsel (Ingrid R. Gustafson, *on the brief*), *for* Hon. Sylvia O. Hinds-Radix, Corporation Counsel, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Amon, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Edgar D. Telesford appeals the district court's judgment in favor of Defendant-Appellee New York City Department of Education ("DOE") dismissing his Americans with Disabilities Act ("ADA") claims.[1] The district court issued an order granting DOE's motion for summary judgment. We

---

[1] Telesford also raised a denial-of-tenure claim under 42 U.S.C. § 1983, a failure-to-accommodate claim under the ADA, and claims under state and city human rights law. Because Telesford's brief does not address these claims, they are deemed abandoned. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995).

2

assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

This Court "review[s] *de novo* a district court's grant of summary judgment after construing all evidence, and drawing all reasonable inferences, in favor of the non-moving party." *Sotomayor v. City of N.Y.*, 713 F.3d 163, 164 (2d Cir. 2013) (per curiam). "Summary judgment is appropriate only when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*[2] A genuine dispute requires evidence that "would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016).

"Title I of the ADA prohibits discrimination against a qualified individual on the basis of disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 234–35 (2d Cir. 2015) (per curiam). To prevail on an ADA discrimination claim, the plaintiff must show, among other things, that "discrimination was the but-for cause of [the] adverse employment action." *Natofsky v. City of N.Y.*, 921 F.3d 337, 348 (2d Cir.

---

[2] Unless otherwise noted, this order omits all internal quotation marks, alterations, footnotes, and citations in its quotations from case law and the parties' briefings.

2019). Claims alleging ADA discrimination are subject to the *McDonnell Douglas* burden-shifting framework. *Davis*, 804 F.3d at 235; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff must "establish a *prima facie* case of discrimination," after which "the burden of proof shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employer's conduct." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019). If the defendant does so, "the plaintiff must then demonstrate that the employer's assigned reason was a pretext or discriminatory in its application." *Id.*

The ADA also prohibits retaliation. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citing 42 U.S.C. § 12203(a)). To prevail on an ADA retaliation claim, the plaintiff must show, among other things, that "a causal connection exists between the protected activity and the adverse action." *Natofsky*, 921 F.3d at 353. As with ADA discrimination claims, retaliation claims under the ADA are also subject to the *McDonnell Douglas* burden-shifting framework. *See Treglia*, 313 F.3d at 719.

Here, even assuming that Telesford made an initial showing of discrimination and retaliation under the ADA, summary judgment was proper.

4

The district court correctly concluded that Telesford did not submit evidence that would have permitted a reasonable juror to conclude that the DOE's proffered nondiscriminatory and nonretaliatory bases for denying tenure and revoking the reversal letter were pretextual.

Telesford received disciplinary letters and poor performance evaluations before he was injured or engaged in protected activity. *Cf. Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (holding that an inference of retaliation did not arise where "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity"). Most significantly, in May 2014, Telesford refused the principal's instruction to cover another class during Telesford's free period and received a disciplinary letter. The letter warned that the incident could lead to further disciplinary action, "including an adverse rating and [Telesford's] termination." Dist. Ct. Docket 81-2 at 258. Moreover, in his six performance reviews, wherein Telesford could receive ratings of "ineffective," "developing," "effective," and "highly effective," Telesford mostly received "ineffective" or "developing" ratings on the full range of metrics evaluated. The DOE completed these reviews *before* Telesford sustained his injury and engaged in

5

protected activity. Although his ratings showed some improvement by the spring (before his injury), Telesford still received only 5 ratings of "effective," as contrasted with 12 ratings of "developing" in his last review of the year. His final global rating for the year was "developing." In the principal's view, Telesford was not "tenurable." This evidence supports the DOE's claim that it had legitimate, nondiscriminatory reasons for declining tenure.

Telesford has not produced sufficient evidence from which a reasonable jury could conclude that these reasons were pretextual. In an affidavit filed in response to the DOE's motion, Telesford contends that before he was injured, the principal invited him to teach a summer course and to return the following school year. He also asserts that the principal said he would shred Telesford's disciplinary letters so he would start with a "clean slate." Dist. Ct. Docket 80-4 at 2–3. A jury could credit these assertions in part. In his initial deposition testimony, Telesford did not say that he was invited to teach again the following school year. Nor did he mention that the principal had promised to shred his disciplinary letters. The Chancellor's Committee Report, generated by the committee that reviewed Telesford's administrative challenge to the denial of

certification, does not reflect that Telesford reported these events to the committee. A jury could nevertheless credit Telesford's claim that, prior to his tenure review, the principal offered him a position the next academic year. But a jury could not credit his assertion that the principal promised to shred his past disciplinary reports. *See Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[F]actual issues created *solely* by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial.") (emphasis added). Telesford's eleventh-hour claim that the principal would shred his disciplinary reports cannot be squared with his failure to recount this event during his deposition and during the Chancellor's Committee proceeding. *See Perma Rsch. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment[.]").

We are thus left with two facts to consider: that Telesford was scheduled to teach the following school year and that the principal offered him a summer teaching position. Accepting these facts as true, they are insufficient to rebut the

7

DOE's legitimate, nondiscriminatory reasons for denying him tenure. Telesford does not dispute that his probationary contract continued into the next school year. With this understanding, when the principal invited Telesford to teach that summer and said he would have a position the following academic year, this evidence supports the inference that Telesford was scheduled to work through the remainder of his probationary term, which extended into the next academic year.

But Telesford urges us to infer more. He suggests that because in the spring, before his actual tenure review, the principal offered him a teaching position in the summer and in the new school year, the principal must have intended at that time to approve his tenure effective at the expiration of his probationary contract. But Telesford has offered no evidence to support that broader inference. Nor did he submit any evidence suggesting that the offer to teach a summer course within the term of his probationary contract meant that he was tenurable, or that the DOE intended to certify him for tenure. Telesford's theory requires impermissible speculation and conjecture. *See Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture is insufficient to preclude [summary judgment.]").

8

We also reject his second theory of pretext: that the Chancellor's Committee's split recommendation to reverse Telesford's tenure denial suggests that the reasons offered for his termination were pretextual. This fact is but a "scintilla of evidence" in support of Telesford's position, and it cannot defeat summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Notably, the Committee's majority found that the documentation regarding Telesford's performance ratings was "thorough and comprehensive." Dist. Ct. Docket 81-2 at 367. The Committee also observed that Telesford did not achieve an overall instructional rating of "effective," which is required to achieve tenure. *Id.* The fact that two of the three Committee members thought Telesford should have been given better mentorship and more time between evaluations does not suggest that the DOE's partial reliance on those evaluations—all conducted before his injury—was pretextual.

Finally, as to his retaliation claim, Telesford contends that the superintendent initially intended to reinstate his tenure after receiving the Committee's recommendation, but, after she saw his request for reasonable accommodations, she changed her mind. This argument is too speculative to

9

show pretext. *See Harlen Assocs.*, 273 F.3d at 499. The superintendent's denial was consistent with her prior determination. She and her secretary testified that they sent Telesford the wrong form letter and corrected their error within days. Telesford has provided no evidence from which a reasonable juror could find pretext. *See D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.").

We have considered all of Telesford's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10