23-1220-cv
*Daly v. Westchester Cnty. Bd. of Legislators*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of July, two thousand twenty-four.

PRESENT:
        JOSEPH F. BIANCO,
        SARAH A. L. MERRIAM,
           *Circuit Judges*,
        JANE A. RESTANI,
           *Judge*.[*]

_____

DANTE EDOARDO DALY,

        *Plaintiff-Appellant*,

    v.                                  23-1220-cv

WESTCHESTER COUNTY BOARD OF LEGISLATORS,

        *Defendant-Appellee*.

_____

FOR PLAINTIFF-APPELLANT:       MICHAEL H. SUSSMAN, Sussman & Goldman, Goshen, New York.

FOR DEFENDANT-APPELLEE:       JASON S. WHITEHEAD, of Counsel (Justin R. Adin, of Counsel, *on the brief*), *for* John M. Nonna, Westchester County Attorney, White Plains, New York.

_____

[*] Judge Jane A. Restani, of the United States Court of International Trade, sitting by designation.

Appeal from a judgment of the United States District Court for the Southern District of New York (Philip M. Halpern, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on August 1, 2023, is **AFFIRMED**.

Plaintiff-Appellant Dante Edoardo Daly appeals from the district court's grant of summary judgment in favor of Defendant-Appellee Westchester County Board of Legislators ("BOL") on his disability claims. Daly worked as Director of Fiscal Affairs for BOL from September 29, 2014 until March 1, 2018. In his lawsuit, Daly alleged, *inter alia*, that BOL unlawfully terminated his employment in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C §§ 12101 *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701 *et seq*. On appeal, Daly argues that the district court erred in granting summary judgment because a rational jury could find that he was terminated because BOL regarded him as disabled due to his back injury and his plan to have spinal fusion surgery later in 2018. We review the award of summary judgment *de novo* and will affirm if, after resolving all ambiguities and drawing all permissible factual inferences in favor of Daly, there is no genuine dispute of material fact and BOL is entitled to judgment as a matter of law. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008); Fed. R. Civ. P. 56(a). In doing so, we assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.[1]

---

[1] As a threshold matter, BOL argues that Daly could not proceed on any claims under the Rehabilitation Act because "[t]he BOL—as an independent branch of Westchester County (as opposed to a 'program or activity')—did not actually receive federal financial assistance during Daly's employment, and is therefore not subject to the Rehabilitation Act." Appellee's Br. at 16–17; *see* 29 U.S.C. § 794(a), (b)(1). However, we need not address that issue because, for the reasons set forth below, we conclude that the Rehabilitation Act claim fails on the merits for the same reasons as the ADA claim.

We analyze Daly's claims under the familiar *McDonnell Douglas* burden-shifting framework used for both ADA and Rehabilitation Act claims. *Bey v. City of New York*, 999 F.3d 157, 165 (2d Cir. 2021) (ADA); 29 U.S.C §§ 791(f), 794(d) (stating that discrimination claims under the Rehabilitation Act are determined using the standards set forth in the ADA). To establish a *prima facie* case under the ADA, the plaintiff must show by a preponderance of the evidence that: (1) his employer is covered by the Act; (2) he is disabled as defined by the ADA; (3) he is qualified to perform essential functions of his job, with or without reasonable accommodation; and (4) he experienced adverse employment action due to his disability, or his employer refused to provide a reasonable accommodation. *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) (per curiam). Under the ADA, the term "disability" means that the individual: (a) has "a physical or mental impairment that substantially limits one or more major life activities," (b) has "a record of such an impairment," or (c) is "regarded as having such an impairment." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F. 4th 159, 166–67 (2d Cir. 2024) (quoting 42 U.S.C. § 12102(1)). A person is "regarded as" disabled if he "establishes that he . . . has been subjected to an action prohibited [by the ADA or the Rehabilitation Act] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). An individual may not be "regarded as" disabled, however, if the perceived impairment is "transitory"—having an "actual or expected duration of 6 months or less"—and "minor." § 12102(3)(B). Once the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment decision. *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019) (internal quotation marks and citation omitted). If the defendant satisfies its burden, the burden then shifts back to the plaintiff to provide some evidence that the defendant's proffered reasons are a pretext, and that discrimination was the real reason for the defendant's action. *See id.* With respect to the

3

causation requirement, the plaintiff must demonstrate that "but for" his disability or perceived disability, his employment would not have been terminated. *Natofsky v. City of New York*, 921 F.3d 337, 347 (2d Cir. 2019).

As an initial matter, the district court held that Daly's "regarded as" claim under the ADA is precluded because he failed to exhaust his administrative remedies with the Equal Employment Opportunity Commission ("EEOC"). *See Daly v. Westchester Cnty. Bd. of Legislators*, No. 19-CV-04642, 2023 WL 4896801, at *5 (S.D.N.Y. Aug. 1, 2023). However, we need not address that issue because we conclude, even assuming *arguendo* that Daly *did* properly exhaust his administrative remedies, summary judgment was warranted on the merits, as the district court held in the alternative.

We are unpersuaded by Daly's contention that the district court erred in concluding that he failed to establish a *prima facie* case of disability discrimination because he failed to present evidence from which a reasonable jury could conclude that Chairman Benjamin Boykin, the supervisor who terminated him, regarded him as disabled. *See id*. at *6. Daly conceded that he never spoke to Boykin directly about his back injury, nor was there any other evidence adduced in discovery to support a reasonable inference that Boykin knew about the back injury or believed that Daly was disabled under the ADA. *See E.E.O.C. v. J.B. Hunt Transp., Inc*., 321 F.3d 69, 76 (2d Cir. 2003) (finding that "comments, made by people other than the ultimate hiring authorities," were insufficient evidence to show that the decisionmaker perceived job applicants as disabled), *superseded by statute on other grounds as stated in Wegner v. Upstate Farms Co-op., Inc.*, 560 F. App'x 22, 23 (2d Cir. 2014) (summary order). Instead, Daly's "regarded as" claim hinges on his assumption that the former BOL chairman's Chief of Staff, Gary Friedman, informed Boykin's incoming Chief of Staff, Dennis Power, in early 2018 about Daly's back injury and anticipated surgery, and a further assumption that Power then conveyed this information to Boykin prior to

4

Daly's termination in March 2018.[2] Daly admits he is unsure whether Friedman relayed this information to Power, and he adduced no evidence of Power communicating any such information to Boykin. Thus, Daly's pure speculation that Boykin learned third-hand about Daly's back injury and anticipated surgery is inadequate to create a genuine dispute of material fact with respect to Boykin's knowledge. *See Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) ("A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (alteration adopted) (citation omitted)); *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 319 (2d Cir. 2008) ("Conclusory statements, conjecture, and speculation, are insufficient to create a genuine factual dispute."); *see also Bruzzese v. Sessions*, 725 F. App'x 68, 71 (2d Cir. 2018) (summary order) (emphasizing that "[t]o determine whether a plaintiff's employer regards her as disabled, we look primarily to the views of the person who made the decision to take adverse employment actions, rather than those of other supervisors or employees").

In opposition to BOL's motion for summary judgment, Daly submitted an affidavit in which he alleged that Boykin regarded Daly as disabled because Daly overheard Boykin state to another BOL employee that "Dante is disabled." Joint App'x at 1115 ¶ 49. He further alleged generally that Power and Boykin "applied pressure to [him] to say that [he] was unable to perform the duties of [his] job as a result of [his] disability." Joint App'x 1114 ¶ 42. However, in his deposition, Daly was specifically asked if any reference was ever made by Boykin and Power

---

[2]   According to Daly, in December 2017, before Boykin became Chairman of BOL, Daly informed his colleagues, including Friedman, about his intention to take leave for spinal fusion surgery in August or September 2018. Daly asserts that Friedman stated he would relay that information to Power. BOL has a formal procedure for employees requesting time off, which involves employees filling out a request and submitting it to their supervisor. If approved, the supervisor would then place the approval in a folder in the office of BOL's Clerk and Chief Administrative Officer. Daly had complied with this procedure previously, under the prior administration, but admitted that he did not submit a formal leave request for any anticipated back surgery prior to his termination.

about his disability, and he responded, "No, not at all." Joint App'x at 342. Thus, these new allegations in Daly's affidavit, which are not supported by any other evidence of record, and which contradict his deposition testimony, do not create a genuine dispute of material fact precluding summary judgment. *See Hayes v. N.Y.C. Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (finding factual disputes arising solely from an affidavit prepared to oppose a summary judgment motion are not "genuine" issues requiring a trial). In short, there is insufficient evidence from which a rational jury could find that Boykin knew about Daly's back injury and perceived him as being disabled.

In any event, even assuming *arguendo* that Daly established a *prima face* case, he has not set forth evidence to rebut BOL's legitimate, nondiscriminatory reason for his termination—namely, his poor job performance. After assuming their new BOL positions, Boykin and Power interviewed all current BOL employees who were expected to continue their employment. During an initial interview with Daly, Boykin questioned him about his skill set and his ability to work with Excel spreadsheets. Boykin found that Daly "would not and could not answer those questions." Joint App'x at 886. Boykin attributed Daly's performance in the initial interview to a "bad day" and granted him a second interview. Joint App'x at 887. Daly was the only member on BOL staff to receive a second interview. Following that second interview, Boykin concluded that Daly "[c]ould not provide the appropriate level of financial expertise that was needed." Joint App'x at 867. There was also evidence in the record of prior complaints about Daly's work

performance over the years,[3] and an earlier reassignment of Daly's responsibilities[4] predating Boykin's tenure as Chairman. *See Natofsky*, 921 F.3d at 351 (upholding summary judgment on discrimination claim where "[t]here was ample evidence that [the decisionmakers] had reason to (and did) think that [plaintiff's] performance was deficient and demoted him on that basis"); *see also Chukwurah v. Stop & Shop Supermarket Co. LLC*, 354 F. App'x 492, 495 (2d Cir. 2009) (summary order) (affirming denial of summary judgment because defendant's legitimate reasons for termination included years of consistently negative employment reviews that criticized the plaintiff's performance as needing improvement or being less than competent). Although Boykin did not indicate knowledge of Daly's negative performance history, that evidence nevertheless supports the conclusion that no rational jury could find that his independent determination regarding Daly's lack of competence was pretextual. Therefore, even viewing the evidence in the light most favorable to Daly, no rational jury could find that, "but for" his perceived disability, his employment would not have been terminated. *Natofsky*, 921 F.3d at 351.

*          *          *

---

[3] The prior BOL Chairman, Michael Kaplowitz, who hired Daly in 2014, testified in his deposition that he received complaints "quite often" about Daly's poor work performance from Tara Bernard and Friedman. Joint App'x at 512. Specifically, Kaplowitz stated the complaints included that Daly had a "lack of substantive grasp of the job," and he "wasn't pulling his weight relative to his substantive role." Joint App'x at 511–12. Friedman also stated that Daly would "go off on different tangents" and fail to provide the required budgetary analysis and information. Joint App'x at 695.

[4] Kaplowitz testified that he discussed terminating Daly on several occasions, but because "he had a young family and a young child" he did not want to fire him, and instead, Daly's "work performance required that [Kaplowitz] split the job into two." Joint App'x at 566.

We have considered Daly's remaining arguments and conclude that they are without merit.

Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court